# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MICHAEL J. DAWE,

      **Plaintiff,**

v.                                 Case No.  8:09-cv-620-T-30AEP

JEFFREY ROGERS, ADAM BUGG,
LESTER ARADIS, and CITY OF LARGO,
FLORIDA,

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 18), Plaintiff's Response to Motion to Dismiss (Dkt. 24), and Defendants' Memorandum in Reply to Plaintiff's Response to Motion to Dismiss Second Amended Complaint (Dkt. 27).  The Court, having considered the motion, response, and reply, and being otherwise advised in the premises, finds that Defendants' Motion to Dismiss Second Amended Complaint (Dkt. 18) must be denied.

## BACKGROUND

Plaintiff's Second Amended Complaint alleges federal claims pursuant to 42 U.S.C. § 1983, along with various state causes of action (Dkt. 17).  Specifically, the Second Amended Complaint alleges that on June 19, 2006, at approximately 2:00 a.m., Plaintiff was walking home from a friend's house and took a shortcut over a fence through a grassy/wooded area.  Plaintiff then laid down in a grassy/wooded area to rest.  Around this

same time, Defendant/Officer Adam Bugg ("Bugg") observed a white male approximately 25-30 years old with long brown hair sitting in the driver's seat of a vehicle. Bugg decided to investigate the driver and turned his parol car around, and while he was turning the car around, noticed the person he believed he saw in the car hop over a fence. Bugg then went to the vehicle and found it unoccupied with the glove box open and the light on.

Bugg called for assistance and a K-9 unit and, while waiting for the K-9 unit, ran the license number of the vehicle to determine the owner. Bugg made contact with the owner, who stated that no one was authorized to enter the vehicle. The owner of the car later confirmed that nothing was stolen or taken from the vehicle.

Defendant/Officer Jeffrey Rogers ("Rogers") eventually arrived at the scene and Bugg informed Rogers of the area where he saw a white male jump over the fence. Rogers then retrieved his K-9, Draco, from his vehicle, and sent him into the grassy/wooded area, off his leash, and without supervision to apprehend the unknown person. Rogers did not provide any warning or notice to the unknown person to come out of the woods or warn the unknown person in any way that Draco would be released to bite and hold the unknown person.

During this time, Plaintiff was unarmed, asleep in the woods, and posing absolutely no threat to any person. Plaintiff was awakened from his sleep after Draco viciously attacked him by repeatedly biting his right arm. Prior to being attacked by Draco, Plaintiff did not make any threatening moves or motions, or provoke Draco in any way. Rogers was unable to stop Draco's attack on Plaintiff.

When Rogers did arrive at the scene where Draco was biting Plaintiff, Rogers failed to immediately command Draco to release Plaintiff. The failure to immediately command Draco to stop allowed the attack to continue resulting in more serious injury to Plaintiff.

Based on the July 19, 2006 incident, Plaintiff asserted claims against the Defendants over the use of a police canine during an arrest. Plaintiff's claims against Rogers and Bugg allege that they violated Plaintiff's Fourth and Fourteenth Amendment rights by releasing Draco into the wooded area and allowing Draco to attack Plaintiff. Plaintiff's claims against Defendant the City of Largo and Defendant Chief Aradi ("Aradi") relate to the City of Largo's "bite and hold" policy regarding its canines and Aradi's failure to properly train his canine handlers. Plaintiff also asserts Florida state law claims of battery and intentional infliction of emotional distress.

Defendants' Motion to Dismiss argues that all of Plaintiff's claims must be denied with prejudice. The Motion argues that Rogers and Bugg are law enforcement officers who were acting within their discretionary authority and are entitled to qualified immunity. The Motion also argues that Plaintiff's factual allegations do not support a cognizable Section 1983 claim against the City of Largo and Aradi, nor do the allegations amount to a battery or infliction of emotional distress. Lastly, Defendants argue that Count V must be dismissed, because the Eleventh Circuit does not recognize a cause of action under the "state created danger" doctrine.[1] For the reasons set forth below, the Court finds that Defendants' Motion to Dismiss must be denied because Plaintiff has sufficiently pled his claims.

---

[1] Plaintiff stipulates to the dismissal of Count V.

## **DISCUSSION**

### I.     **Motion to Dismiss Standard**

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007). While in the ordinary case a plaintiff may find the bar exceedingly low to plead only more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," it is clear that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1959, 1965; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n.43 (11th Cir. 2008) (noting the abrogation of the "no set of facts" standard and holding *Twombly* "as a further articulation of the standard by which to evaluate the sufficiency of all claims"). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## II. Qualified Immunity

Defendants Rogers and Bugg argue that they are entitled to qualified immunity. Plaintiff argues that the Second Amended Complaint sufficiently alleges facts demonstrating that Defendants are not entitled to qualified immunity.

Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. *See Wilson v. Layne,* 526 U.S. 603, 609 (1999). The doctrine shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Eleventh Circuit has recognized that "qualified immunity liberates government agents from the need to constantly err on the side of caution by protecting them both from liability 'and the other burdens of litigation, including discovery.'" *Holmes v. Kucynda,* 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting *Lambert v. Fulton County,* 253 F.3d 588, 596 (11th Cir. 2001)). At the same time, qualified immunity does not offer protection "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Harlow,* 457 U.S. at 815 (quoting *Wood v. Strickland,* 420 U.S. 308, 322 (1975)) (emphasis omitted).

To receive qualified immunity, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir. 1991)). It is clear from the facts of the Second Amended

Complaint that Rogers and Bugg were acting within their discretionary authority during the time that Plaintiff was attacked. From there, qualified immunity analysis proceeds in two steps. *Chesser v. Sparks,* 248 F.3d 1117, 1122 (11th Cir. 2001). First, the court must address the "threshold question" of whether the facts as alleged, viewed in the light most favorable to Plaintiff, establish a constitutional violation at all. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If no constitutional violation is established, then the defendants prevail, and "there is no necessity for further inquiries concerning qualified immunity." *Id.* If, however, under the plaintiff's version of facts it appears a constitutional right has been violated, the court must then determine whether that right was clearly established at the time the events in question occurred. *Id.*

In formulating the immunity, the Supreme Court recognized that personal liability lawsuits against government officials exact "substantial social costs," including "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814. To minimize those costs in the public interest, the Supreme Court has repeatedly emphasized that an official's entitlement to qualified immunity must be resolved at the earliest possible stage of the litigation and that "discovery should not be allowed" until it is determined that the plaintiff has properly stated a claim for the violation of a clearly established right. *Id.* at 818; *Saucier*, 533 U.S. at 200 ("where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive"). In fact, "until this threshold immunity question

is resolved, discovery should not be allowed." *Siegert*, 500 U.S. at 231 (citing *Harlow*, 457 U.S. at 818; *Crawford-El*, 523 U.S. at 598 ("the district court should resolve that threshold question before permitting discovery")).

Importantly, at the motion to dismiss stage, "[t]o state a claim under §1983, a plaintiff must allege that he was deprived of a federal right by a person acting under color of state law." *See Amnesty International, USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009). "Because the defense of qualified immunity should be resolved at the earliest possible procedural moment, the complaint must allege sufficient facts for the court to determine whether the alleged constitutional violation was clearly established at the time of the incident." *Id.* In *Battle*, the Eleventh Circuit noted that the district court conflated the issues of satisfying the heightened pleading with the need to overcome qualified immunity. *Id.* at 1180. The Eleventh Circuit noted:

> To satisfy even the heightened pleading standard for §1983 claims, (a plaintiff) *need plead only 'some factual detail'* from which the court may determine whether Defendants' alleged actions violated a clearly established constitutional right. The heightened pleading standard does not require a complaint to cite cases demonstrating that the defendant is not entitled to qualified immunity.

*Id.* (emphasis added).

Claims of excessive force by police officers are cognizable under 42 U.S.C. § 1983, as are claims that officers who were present failed to intervene. *Fundiller v. City of Cooper City,* 777 F.2d 1436 (11th Cir. 1985). "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (citing *Tennessee v. Garner,* 471 U.S.

1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) and *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Thus, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir. 2002). In this respect, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotations omitted). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In addition, other considerations include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir. 2008) (quotation omitted). In this respect, the Supreme Court has "recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396.

Plaintiff has stated sufficient facts under the *Twombly* or any "heightened pleading" standard that the case should proceed against Rogers and Bugg because Plaintiff has alleged that these officers violated his Fourth Amendment rights by using excessive force, causing severe physical injuries, and by failing to intervene. He alleges specifically that Rogers sent Draco into the woods after an unknown white male because Bugg thought this person may have committed a burglary of a vehicle. Draco attacked Plaintiff and continued to bite Plaintiff until Rogers finally ordered Draco off of Plaintiff. Plaintiff was unarmed and was merely sleeping in the same area that Draco was sent to search, off of his leash. Given these facts, a determination of whether Rogers or Bugg might be entitled to qualified immunity cannot be determined at this juncture or upon consideration of a motion to dismiss. Indeed, the allegations, taken as the truth, suggest that the officers were not objectively reasonable in sending Draco into the woods for a nonviolent crime against an unknown and, presumably, nonviolent person. Moreover, the allegations also suggest that it was not objectively reasonable to allow Draco to continue to bite Plaintiff after it was clear that Plaintiff did not serve as a threat to the officers or any other person. Because the Court must examine only the facts alleged in the Second Amended Complaint, it cannot assume that Plaintiff committed a crime or was thought to be a safety risk to the officers or others. Moreover, at the time that the incident occurred, the law was clearly established that a police officer cannot use deadly force to seize a suspect who "poses no immediate threat" to human life. *See Tennessee v. Garner*, 471 U.S. 1 (1985); *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000).

The vast majority of Roger's and Bugg's arguments are more appropriate at the summary judgment stage. They cite to cases that dismissed claims under 42 U.S.C. §1983 at the summary judgment stage. The arguments seem to assume that the officers had probable cause to release Draco. At this stage, however, the Court cannot question the truth of Plaintiff's allegations.

The Court is mindful of the Supreme Court and Eleventh Circuit precedent requiring a district court to dispose of the issue of qualified immunity as early as possible in a case. Accordingly, Rogers and Bugg may conduct limited discovery for the next sixty (60) days on the issue of qualified immunity and again raise the issue on summary judgment. *See Harbert Itern., Inc. v. James*, 157 F.3d 1271 (11th Cir. 1998) (discussing that a trial court must exercise its discretion to prevent unnecessary and burdensome discovery in protection of the qualified immunity defense). Accordingly, Defendants' Motion to Dismiss on the grounds that Rogers and Bugg are entitled to qualified immunity is denied.

## III. State Claims

Defendants' Motion to Dismiss argues that a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive. Specifically, Rogers and Bugg argue that their actions were not clearly excessive under the circumstances and thus, both the battery and intentional infliction of emotional distress claims must be dismissed. Plaintiff, however, has sufficiently alleged that Rogers and Bugg acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Accordingly, at this stage of the proceeding, dismissal is not appropriate and Defendants' Motion to Dismiss on these grounds must be denied. This issue is better resolved upon a motion for summary judgment.

**IV.    Claims against the City of Largo and Chief Lester Aradi**

Defendants' Motion to Dismiss argues that Plaintiff cannot allege claims against the City of Largo or Aradi, because Rogers and Bugg were objectively reasonable under the circumstances and the "bite and hold" policy is not unconstitutional as a matter of law. Defendants also argue that the allegations are insufficient to demonstrate that Aradi should be liable in his individual capacity.

"It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of respondeat superior." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir. 1991); *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977) (requiring evidence that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."). "Thus, recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'-that is, acts which the municipality has officially sanctioned or ordered." *Brown,* 923 F.2d at 1479.

An allegation of a failure to train or supervise can be the basis for liability under § 1983 only where a governmental entity inadequately trains or supervises its employees, this failure to train or supervise is a policy of the entity, and that policy causes the employees to

violate a citizen's constitutional rights. *See Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Because a governmental entity will rarely have an express policy of inadequately training or supervising its employees, a plaintiff may prove such a policy by showing that the entity's failure to train or supervise evidenced a deliberate indifference to the rights of its citizens. *Gold,* 151 F.3d at 1350. "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold,* 151 F.3d at 1350.

It is also "well settled in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jeane,* 326 F.3d 1352, 1360-61 (11th Cir. 2003); *see McLaughlin v. City of Grange,* 662 F.2d 1385, 1388 (11th Cir. 1981), *cert. denied* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Instead, the individual supervisor must have either personally participated in the alleged unconstitutional conduct, or there must exist a causal connection between the actions of the supervisor and the alleged unconstitutional deprivation. *Cottone,* 326 F.3d at 1360-61; *see Gonzalez v. Reno,* 325 F.3d 1228, 1234-35 (11th Cir. 2003). If the supervisor did not personally participate in the allegedly unconstitutional conduct, the court must consider the existence of the causal connection. The Eleventh Circuit has described three alternate ways in which the necessary causal connection may be established: (1) "when a history of widespread abuse puts the responsible supervisor

on notice of the need to correct the alleged deprivation, and he fails to do so;" (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights;" or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone,* 326 F.3d at 1360 (quoting *Gonzalez,* 325 F.3d at 1234-35) (internal citations and quotations omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone,* 326 F.3d at 1360.

At this stage, the Court finds that Plaintiff sufficiently pled claims against the City of Largo and Aradi. The Second Amended Complaint alleges that the City of Largo and Aradi failed to ensure that its officers did not apply unreasonable force in the use of police K-9 dogs and allow such dogs to attack and bite subjects where the use of such force was unnecessary and excessive. It also alleges that there was a failure to adequately train, supervise, and control officers and that what happened to Plaintiff was not an isolated incident. The Second Amended Complaint also alleges that the City of Largo and Aradi had a history by policy and custom of authorizing and allowing the unnecessary and excessive use of force against the public with police K-9 dogs and was on notice prior to the attack on Plaintiff that officers were not following the department's own policy and/or that the policy itself was improper. Accordingly, Defendants' Motion to Dismiss on the grounds that the claims against the City of Largo and Aradi must be dismissed is denied.

## CONCLUSION

For the reasons set forth herein, it is hereby ORDERED and ADJUDGED that:

1.      Defendants' Motion to Dismiss (Dkt. 18) is hereby **DENIED**, except that Count V shall be dismissed pursuant to Plaintiff's response agreeing to same.

2.      As to Roger's and Bugg's arguments that they are entitled to qualified immunity, Rogers and Bugg may conduct limited discovery for the next sixty (60) days on the issue of qualified immunity and again raise the issue in a motion for summary judgment.

**DONE** and **ORDERED** in Tampa, Florida on August 18, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-620.m2dismiss.frm