# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**MICHAEL J. DAWE,**

    **Plaintiff,**

v.                                                           Case No. 8:09-cv-620-T-30AEP

**JEFFREY ROGERS, Individually and
as an Officer of the City of Largo
Police Department, et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants Jeffrey Rogers and Adam Bugg's Dispositive Motion for Summary Judgment Regarding Qualified Immunity (Dkt. 32), Plaintiff's Response to same[1] (Dkt. 40), and Defendants' Memorandum of Law in Reply (Dkt. 47). The Court, having reviewed the motion, response, reply, record evidence, and being otherwise advised in the premises, concludes that Defendants Jeffrey Rogers and Adam Bugg's Dispositive Motion for Summary Judgment Regarding Qualified Immunity should be granted.

---

[1] In his Response, Plaintiff agrees that dismissal of Defendant Adam Bugg is appropriate because he was not present when Plaintiff was bitten by K-9 Draco (Dkt. 40, fn1). Accordingly, final summary judgment will be entered in favor of Defendant Adam Bugg.

# BACKGROUND

## I. Procedural Background

Plaintiff's Second Amended Complaint alleges federal claims pursuant to 42 U.S.C. § 1983, along with various state causes of action (Dkt. 17). On June 9, 2009, all of the Defendants filed a Motion to Dismiss. Specifically, Defendants Adam Bugg and Jeffrey Rogers moved to dismiss the claims asserted against them in their individual capacity on the basis of qualified immunity (Dkt. 18). On August 18, 2009, the Court entered an Order denying the Motion to Dismiss (Dkt. 29). The Order provided that limited discovery could be conducted on the qualified immunity defense and that it could be raised again by the officers in a Motion for Summary Judgment.

The parties conducted limited discovery and the issue of qualified immunity is now before the Court again on Defendants Adam Bugg and Jeffrey Rogers' Motion for Summary Judgment.

## II. Relevant Facts

On June 19, 2006, at approximately 2:00 a.m., Defendant/Officer Adam Bugg ("Bugg") was patrolling the Colony Square Apartments' parking lot. During his patrol, Bugg noticed an individual sitting in the driver's seat of a vehicle, with his legs sticking out of the vehicle. Bugg decided to turn his patrol car around and investigate the matter further. Bugg then heard a chain-link fence being hit and saw the same individual jumping a fence into a wooded area. Bugg investigated the vehicle and saw that it was unoccupied with the glove

box open and its light on. Bugg believed that the individual that jumped the fence had burglarized the vehicle and called for assistance and a K-9 unit.

While waiting for the K-9 unit to arrive, Bugg ran the license number of the vehicle to determine the owner. Bugg then called the owner and the owner confirmed that no one was authorized to enter the vehicle. Defendant/Officer Rogers ("Rogers") then arrived with his K-9, Draco. Bugg informed Rogers that he had a valid auto burglary, provided a description of the individual, and showed Rogers where he saw the individual jump over the fence. Rogers decided to use Draco to track the suspect. According to Rogers, the purpose of a track is to locate a hidden individual. The police canine is trained to not bite the individual it finds. Tracking is considered nonaggressive activity and the K-9 is always on a lead when tracking.

According to Rogers and Bugg, Draco was on a lead. According to Rogers, the lead was nine feet long. Rogers assisted Draco over the fence, while on his lead, and then climbed over the fence himself. Bugg did not go over the fence with Rogers and did not act as a back-up officer to Rogers. Rogers did not provide any warning or announcement as to the deployment of Draco. According to Rogers, a warning or announcement of a K-9 is not required when an individual is tracked, because tracking is not considered aggressive activity. According to Rogers, the location he was searching was extremely dark and there was heavy vegetation which obstructed his view and provided areas where a person could hide. At that time, Rogers did not have his flashlight turned on due to his concern that he would make himself a target if the suspect was armed. Rogers did not know whether the

suspect had a firearm in his possession. According to Rogers, it was so dark that he could not see Draco and he had to hold his other hand (the hand that was not holding the lead) out in front of him to make sure that he did not run into anything or get hit in the head with anything.

Soon after the deployment of Draco on his lead, Rogers heard a commotion. Because it was dark, Rogers shined his flashlight in the area where Draco was and saw that Draco had engaged in a physical altercation with Plaintiff Michael Dawe ("Dawe"), who met the description of the suspect. According to Rogers, Draco was holding Dawe by his arm and Dawe was struggling with Draco. According to Rogers, a police canine will continue to hold an individual until he ceases his resistance and if the individual continues to struggle, the individual may sustain a greater injury. Rogers does not know what caused the physical altercation and instructed Dawe to stop struggling with Draco so that Rogers could release Draco's hold on him. According to Rogers, Dawe initially kept struggling with Draco for approximately ten seconds. Then Dawe ceased resisting and Rogers was able to disengage Draco from Dawe's arm. Rogers was unaware of why Draco bit Dawe.

According to Bugg, he heard a commotion and Rogers telling someone to stay on the ground. Bugg jumped over the fence and saw that Draco had tracked a male who was the same subject he had seen in the vehicle. According to Bugg, he heard Rogers telling Dawe to stop pulling his arm away from the dog. According to Bugg, when he reached Rogers and Dawe, Draco had just released Dawe.

According to Dawe, he was sleeping in the woods after he climbed the fence. Dawe does not present any evidence disputing that he was the suspect in the vehicle. Dawe was ultimately convicted of trespassing in the vehicle Bugg observed him in. According to Dawe, the nature of the area where Draco was deployed and where he was sleeping was lightly wooded. Dawe sensed the beam of a flashlight waving back and forth across his face and saw the silhouette of a man on the side of the fence opposite him. Dawe saw something, what he later determined was a dog, being pushed over the fence. According to Dawe, the man remained on the other side of the fence. Dawe did not hear anyone say or yell anything to him. Soon thereafter, Dawe heard some rustling on the ground and was suddenly bitten on his right upper arm by a dog with great force. Dawe states that when the dog was attacking him, his left hand was out to the left side of his body. The dog jerked his arm violently back and forth by shaking its head and Dawe screamed in pain. Dawe did not see any officer as the dog attacked him. Dawe did not fight the dog, but the dog was jerking his arm back and forth. Dawe states that he did not resist the dog. According to Dawe, he never saw the dog on a leash.

After a period of time, Dawe heard an officer scream "stop resisting and the dog will stop attacking." (Dkt. 46). After the attack continued, the officer appeared to try to command the dog to release his arm. Dawe does not recall the exact words he used. According to Dawe, the dog would not release his right arm and while the dog continued to bite his arm, the officer had to grab the hind legs of the dog and pull him off of him.

Dawe received injuries to his arm and was taken to the hospital where he had to have surgery performed on his upper right arm. According to the Second Amended Complaint, Dawe's medical expenses amount to $19,251.84.

## DISCUSSION

### I. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.  Qualified Immunity

Rogers contends summary judgment is proper because he is entitled to qualified immunity on Dawe's § 1983 claim. The defense of qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting

from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002)).

To determine the applicability of qualified immunity, the government official's conduct is evaluated under an "objective legal reasonableness" standard. Koch v. Rugg, 221 F.3d 1283, 1295 (11th Cir. 2000) (citations omitted). Importantly, the official's subjective intent is irrelevant to the inquiry. Id. The Supreme Court has established a two-part test to determine the applicability of qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir.2003). First, the Court must determine whether the Plaintiff has alleged the deprivation of a constitutional right. Id. The second step in the analysis is to determine whether Plaintiff's right was "clearly established" at the time the alleged violation occurred. Id.

It is undisputed that Rogers was acting within the scope of his discretionary authority when he apprehended Dawe. Accordingly, it must be determined whether the facts, when viewed in the light most favorable to Dawe, establish that Rogers committed a constitutional violation and if so, whether Dawe's constitutional right was "clearly established" at the time of the violation. See Trammell v. Thomason, 335 Fed. Appx. 835 (11th Cir. 2009).

### A. Violation of a Constitutional Right

Dawe contends Rogers violated his constitutional rights by exercising excessive force when he deployed Draco and did not immediately command Draco to release Dawe during the events that took place on June 19, 2006. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of

excessive force in the course of an arrest. Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To assert a violation of the Fourth Amendment for the use of excessive force, Dawe must demonstrate that (1) a seizure occurred and (2) the force used to effect the seizure was unreasonable. Troupe v. Sarasota County, FL, 419 F.3d 1160, 1166 (11th Cir. 2005).

Determining whether the force used was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake. Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir. 1999). Therefore, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865). "A constitutional violation occurs when the officer's use of force is 'objectively unreasonable' in light of the totality of the circumstances at the time the force is used." Graham, 490 U.S. at 396, 109 S.Ct. 1865.

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case," including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

Graham, 490 U.S. at 396, 109 S.Ct. 1865. In addressing these three factors, the Court should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).

Based on the facts viewed in the light most favorable to Dawe, Rogers' actions did not constitute a violation of Dawe's Fourth Amendment right to be free from excessive force. It is undisputed that Bugg told Rogers that he had probable cause to arrest a suspect for committing a felony burglary and that the suspect had jumped the fence into the woods. It is also undisputed that Rogers did not know whether the suspect was armed and that it was dark and the area was wooded, making it a potentially very dangerous situation. It is also undisputed in the record that Draco was used to track Dawe and that tracking is considered nonaggressive activity because the K-9 is not supposed to bite the individual it is trying to locate. Dawe attempts to create a disputed fact regarding whether Draco was on a leash, but he does not definitely state that Draco was not on a leash. Also, Rogers and Bugg stated that Draco was on a lead, that tracking is not done without the dog being on a lead, and their police reports also state that Draco was used to track Dawe.

Given these facts, it was not objectively unreasonable for Rogers to deploy Draco in order to locate Dawe. While Rogers did not provide Dawe with any kind of warning prior to deploying Draco, this fact alone does not constitute a constitutional violation. See Pace v. City of Palmetto, 489 F. Supp. 2d 1325, 1330-36 (M.D. Fla. 2007). It is also not a constitutional violation to use a dog, trained to bite and hold, to track a suspect. Id.

The record also reflects that it is undisputed that as soon as Rogers heard a commotion, he instructed Dawe to stop struggling with Draco. Dawe's affidavit supports the fact that Rogers told him to stop resisting in order to stop Draco from attacking Dawe. After the attack continued, Rogers then tried to command Draco to release his arm and, when that did not work, Rogers pulled Draco off of Dawe. Whether or not Dawe was struggling with Draco is irrelevant, as the important inquiry is whether Rogers did everything he reasonably could to stop Draco from biting Dawe. According to Rogers, in order to prevent further injury, it is important for the individual to stop struggling with the dog. It is also undisputed that Rogers did not instruct Draco to bite Dawe and that Rogers did not know what prompted Draco to bite Dawe.

These facts are distinguishable from those in <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 927 (11th Cir. 2000). There, qualified immunity was denied where an officer let the K-9 attack the suspect for two minutes even though it was clear that the suspect did not pose a threat of bodily injury to the officer and the suspect was not attempting to flee or resist arrest. These facts are similar to <u>Grimes v. Yoos</u>, 298 Fed. Appx. 916 (11th Cir. 2008). In <u>Grimes</u>, the Eleventh Circuit affirmed the district court's grant of summary judgment based on qualified immunity, noting:

> The record demonstrates that the district court did not err in granting the defendants' cross motion for summary judgment on the excessive force claim. Specifically, the record demonstrates that Yoos's use of canine force was objectively reasonable. From Sinnott's and Yoos's police reports, it appears that the defendants had reason to believe that the serious felony crime of burglary had recently occurred, as Sinnott stated that she found a freshly broken window upon arriving at the building and Yoos stated that his police dog alerted to fresh human scent in the building.

> Also, from Sinnott's and Yoos's police reports, it appears that the defendants had reason to believe that the perpetrator was in the area of vegetation near the building, as Sinnott stated that she heard movement there and Sinnott and Yoos stated that they both saw an empty cash drawer in that area. Furthermore, from Sinnott's police report and the defendants' affidavits, it appears that the defendants had reason to believe that Grimes may pose a risk to their safety, as Sinnott stated that the vegetation was thick and the visibility low, such that they could not see who was in the bushes and whether he or she was armed, and the defendants each attested that they were concerned for their safety.
>
> Finally, from Sinnott's police report, it appears that the defendants had reason to believe that Grimes was trying to flee, as Sinnott stated that she could hear movement in the vegetation and that a chain link fence nearby was bent, suggesting that someone had bent it in an effort to clear it. Therefore, the record demonstrates that the defendants could have reasonably believed that force was necessary because an unknown number of felony suspects were in a concealed area and were attempting to evade police apprehension.
>
> The fact that Yoos failed to warn Grimes of his and the police dog's presence does not alter the conclusion that the use of force was objectively reasonable.

Id. at 923 (internal citations omitted); see also Crenshaw v. Lister, 556 F.3d 1283 (11th Cir. 2009).

In conclusion, this Court must be mindful of Graham's explicit recognition of, and allowance for, a measure of deference to police judgment given the "tense, uncertain and rapidly evolving" circumstances that police often confront. 490 U.S. at 396-97, 109 S.Ct. 1865 ("[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving-about the amount of force that is necessary in a particular

situation").² Dawe's after-the-fact arguments, including that he was not armed, that nothing was taken from the vehicle, and that Dawe did not pose any kind of threat to the officers are simply not relevant. Accordingly, in light of the totality of the circumstances, Rogers' actions did not constitute excessive force and did not violate Dawe's Fourth Amendment rights.

### B. Whether Dawe's Constitutional Rights Were Clearly Established

Even assuming, *arguendo*, that Rogers' conduct was not objectively reasonable, such that it arguably violated Dawe's constitutional right against the use of excessive force, Dawe's constitutional right against the type of force used in the situation in question was not clearly established.

In determining whether a constitutional right is clearly established, the salient question is whether the state of the law at the time of the incident gave officials fair warning that their behavior was unlawful. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-

---

² The Eleventh Circuit has held that a court should not "view the matter as judges from the comfort and safety of [ ] chambers, fearful of nothing more threatening than the occasional paper cut ... [Rather, the Court must] see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." Mongeau v. Jacksonville Sheriff's Office, 197 Fed.Appx. 847, 850 (11th Cir. 2006) (citing Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004)).

existing law the unlawfulness must be apparent." Id. at 739, 122 S.Ct. 2508 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Official immunity protects "all but the plainly incompetent or those who knowingly violate the law." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). An official is entitled to official immunity "unless their 'supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" Id. (quoting Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002)).

In the Eleventh Circuit, "the law can be 'clearly established' for [official] immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n. 4 (11th Cir. 1997)).

Thus, in order to show that Rogers is not entitled to official immunity, Dawe must be able to point to earlier case law from the Eleventh Circuit, the Florida Supreme Court, or from the United States Supreme Court that is "materially similar ... and therefore provided clear notice of the violation" or to "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances" and established clearly the unlawfulness of Rogers' conduct. Long, 508 F.3d

at 584.

Dawe has not provided, and independent research does not reveal, a statute or constitutional provision or specific case barring the type of force used in the situation in question. This is the case, even assuming that Draco was not on a leash or lead at the time that he was deployed. Also, Rogers' conduct was not so egregious as to be clearly impermissible. As set forth herein, Priester is distinguishable, because the plaintiff in that case immediately surrendered to the police officers and was attacked by the police dog for approximately two minutes, while Draco bit Dawe prior to Rogers even getting to the scene, Rogers never ordered Draco to bite Dawe, and Rogers immediately attempted to get Draco off of Dawe by instructing Dawe to stop struggling, commanding Draco to release, and physically pulling Draco off of Dawe.

Accordingly, Rogers is entitled to qualified immunity and his Motion for Summary Judgment must be granted.

**III. State Law Claims**

Rogers also moves for summary judgment on the state law claims of battery and intentional infliction of emotional distress (Counts VI and X of the Second Amended Complaint). For the same reasons set forth herein, the Court concludes that Rogers is entitled to summary judgment on these claims.[3]

A defendant may be liable for battery under Florida law if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an

---

[3] Notably, a lawful arrest without excessive force cannot meet the elements of battery.

imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). The required intent "is not necessarily a hostile intent, or a desire to do harm." Spivey v. Battaglia, 258 So. 2d 815, 816-17 (Fla. 1972). "Where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it.... However, the knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent." Id.

In order to establish a claim for intentional infliction of emotional distress under Florida law, a plaintiff must show: "(1) deliberate or reckless infliction of mental suffering by the defendant; (2) by outrageous conduct; (3) which conduct of the defendant must have caused the suffering; and (4) the suffering must have been severe." Lapar v. Potter, 395 F. Supp. 2d 1152, 1160 (M.D. Fla. 2005)

Even considered in the light most favorable to Dawe, there is no evidence in the record that Rogers intended to commit an unlawful battery. Similarly, there is no evidence supporting a claim of intentional infliction of emotional distress. Accordingly, Rogers' Motion for Summary Judgment is granted as to the state law claims asserted against him in his individual capacity.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants Rogers and Bugg's Dispostive Motion for Summary Judgment (Dkt. 32) is hereby **GRANTED**.

2. The CLERK is directed to enter **Final Summary Judgment** in favor of Defendants Jeffrey Rogers and Adam Bugg and against Plaintiff Michael J. Dawe.

**DONE** and **ORDERED** in Tampa, Florida on January 15, 2010.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-620.msj.frm